UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

'04    DEC -7    P12 :25

04-C-1169

DOUGLAS J. BUTTIKOFER, ALISSA L.
CHAPMAN, JON CREWS, DARLENE
DAVIES, BRAD HUDON, JR., JEFFREY A.
REYNOLDS, DEA KING, ROSALYN
McRAY, GEORGE PAPAGEORGE,
REBECCA SCHMIDT, JAMIE SEVEDGE,
STEVEN WAYCHOFF SHIRLEY A.
WILLIAMS-WHITE, CAROLYN R.
WILSON, JEROME WILSON, JANET
WOOLFOLK,

CIVIL ACTION NO. _____

(Jury Demanded)          ADELMAN

Plaintiffs,

vs.

SMITHKLINE BEECHAM CORPORATION
D/B/A GLAXOSMITHKLINE AND
GLAXOSMITHKLINE, PLC,

Defendants.

## COMPLAINT

Plaintiffs' allegations herein are based upon personal knowledge and upon the information and belief of their counsel.

## I. Introduction

1. Plaintiffs have ingested the prescription drug Paroxetine ("Paxil") and suffered and/or continue to suffer from withdrawal symptoms following the reduction or termination of their Paxil use. Defendants, GLAXOSMITHKLINE and GLAXOSMITHKLINE, PLC (hereinafter referred to as "GSK" or "Defendants") have aggressively marketed, advertised and sold Paxil to Plaintiffs, wrongfully exposing them to Paxil's withdrawal effects. At all times relevant herein, GSK knew about these side effects but, for years concealed, suppressed and downplayed the severity and

frequency of their existence to Plaintiffs, the medical community and the consuming public. As a result, Plaintiffs were deprived of their ability to exercise their full and informed consent when deciding to take Paxil. Plaintiffs, therefore, bring this action to recover all available equitable and monetary relief for their injuries and to hold GSK accountable for its past and ongoing violations of Wisconsin law.

## II. The Parties

2.      Plaintiffs in this matter are the following individuals: Douglas J. Buttikofer, Alissa L. Chapman, Jon Crews, Darlene Davies, Brad Hudon, Jr., Jeffrey A. Reynolds, Dea King, Rosalyn McCray, George Papageorge, Rebecca Schmidt, Jamie Sevedge, Steven Waychoff, Shirley A. Williams-White, Carolyn R. Wilson, Jerome Wilson, Janet Woolfolk.

3.      Plaintiffs are domiciled in the State of Wisconsin, except for plaintiff Buttikofer, who suffered his injury in Wisconsin and now resides in Iowa. They were not warned of Paxil's ability to cause withdrawal, dependency and addiction, and have suffered from those same side effects. The withdrawal symptoms caused by Paxil are nearly universal in phenomenology and include one or more of the following:

> nausea, anxiety, dizziness, sensory disturbances (including paresthesia and sensation of cramps), headache, vision distortion, sweating, agitation, fatigue, tremor, sleep disturbances (including intense dreams), confusion, suicidality, aggression, palpitations, insomnia, irritability, digestive disorders, and asthenia.

4.      Defendant, SmithKline Beecham Corporation d/b/a GlaxoSmithKline, was, and still is, a corporation duly existing under, and by virtue of, the laws of the State of Pennsylvania. It is engaged in the business of manufacturing, promoting, distributing, marketing, advertising, and selling pharmaceutical drugs, including Paxil. GSK is, and at all relevant times was, doing business throughout the State of Wisconsin and in this judicial district. GSK may be served with process

through its registered agent. At all relevant times herein, GSK tested, manufactured, labeled, marketed, distributed, promoted, advertised and sold Paxil to Plaintiffs and to the general public.

5. Defendant, GlaxoSmithKline, plc, is a foreign corporation located in and organized under the laws of the United Kingdom. It is engaged in the business of manufacturing, promoting, distributing, marketing, advertising, and selling pharmaceutical drugs, including Paxil, throughout the United States, through its conduit and/or agent, GSK. GlaxoSmithKline, plc can be served c/o GSK in the manner set forth above or through The Hague Convention. Hereafter, GlaxoSmithKline, plc and GSK will be jointly referred to as Defendants or GSK.

## III. **Nature of the Case**

6. This is a joinder action brought by the above-named Plaintiffs pursuant to Rule 20 of the Federal Rules of Civil Procedure.[1] In relevant part Rule 20(a) provides that:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. . . . A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Fed. Rule Civ. Proc. 20(a).

7. Plaintiffs have all been injured, personally and financially, by the same GSK transactions and seek to have their many common questions of fact and law resolved. At a minimum, Plaintiffs have been injured by:

    a.    GSK's company-wide concealment and refusal to warn the medical community about Paxil's ability to produce withdrawal, dependency and addiction;

---

[1] Hereinafter, all citations to "Rule" refer to the Federal Rules of Civil Procedure.

b.      GSK's direct-to-consumer ("DTC") advertisements which uniformly fail to warn that Paxil can cause withdrawal, dependency and addiction;

c.      GSK's DTC advertisements which affirmatively state that Paxil is not habit-forming;

d.      GSK's failure to provide a package insert which warns of Paxil's ability to cause: nausea, anxiety, dizziness, sensory disturbances (including paresthesia and sensation of cramps), headache, vision distortion, sweating, agitation, fatigue, tremor, sleep disturbances (including intense dreams), confusion, palpitations, suicidality, aggression, insomnia, irritability, digestive disorders, and asthenia;

e.      GSK's knowing and intentional choice to obscure and conceal Paxil's ability to produce severe and painful withdrawal symptoms;

f.      GSK's knowing and intentional choice to disregard years of scientific evidence about Paxil's ability to produce withdrawal symptoms;

g.      GSK's willingness to expose Plaintiffs to significant personal and financial harm;

h.      GSK's ill-willed choice to refuse to warn Plaintiffs not to go off Paxil without first consulting a doctor, until *after* Plaintiffs were already dependant on Paxil; and

i.      GSK's intentional choice to cause Plaintiffs and their medical doctors/providers to rely on GSK's misrepresentations and omissions regarding Paxil.

8.  Plaintiffs have sustained personal injuries and economic damages as a result of GSK's wrongful acts and omissions and therefore bring this action to recover all available monetary damages allowed by law, in addition to refunds, restitution, disgorgement, punitive or exemplary damages, and injunctive and declaratory relief.

## IV. Jurisdictional Allegations

9.  Plaintiffs are residents of the State of Wisconsin. GSK is a foreign corporation, listing its state of incorporation as Pennsylvania. Pursuant to 28 U.S.C. § 1332, jurisdiction is proper because complete diversity exists between the parties and Plaintiffs have each suffered damages in excess of $75,000.00 and/or each Plaintiff's damages plus the cost of injunctive relief exceeds $75,000.00 per Plaintiff; thus satisfying the amount in controversy requirement. Venue is also proper in this District

because a substantial part of the events and omissions giving rise to Plaintiffs' injuries occurred in this District. *See* 28 U.S.C.A. § 1391.

## V. Factual Allegations

10. Plaintiffs all took Paxil pursuant to prescription. Plaintiffs have each suffered one or more of the above-specified withdrawal symptoms when they reduced or terminated their Paxil usage. These reactions were unexpected by Plaintiffs (and their physicians) and Plaintiffs would not have taken Paxil if they had known about Paxil's general habit-forming nature and ability to cause withdrawal symptoms.

11. GSK is, and at all times has been, legally responsible for providing warning and adequate warnings about Paxil's true risks and side effects.

12. Paxil was introduced into the U.S. market on December 29, 1992. Paxil is classified as an antidepressant in the selective serotonin reuptake inhibitor ("SSRI") class. This class includes other well-known antidepressants such as Prozac (fluoxetine) and Zoloft (sertraline).

13. Since its introduction in the U.S., GSK has never warned that Paxil can <u>cause</u> withdrawal symptoms, dependency or addiction. In fact, GSK has done the opposite, repeatedly telling doctors and the consuming public that: (1) "Paxil is non-habit forming[;]" (2) "Paxil has been studied both in short-term and long-term use and is not associated with dependence or addiction[;]"(3)"Paxil is not associated with dependence, even in long-term use[;]" (4) "Is Paxil addictive? No."

14. These statements affirmatively deny the very facts that GSK admits in other countries. In the Netherlands, France, Italy, the United Kingdom, Ireland, and Spain, for example, GSK labeling acknowledges that Paxil can cause *withdrawal* symptoms. Specifically, Paxil's labeling in each of these countries is as follows:

5

| | |
|---|---|
| **The Netherlands:** | "[A]brupt discontinuation of Seroxat therapy must be avoided as this may result in *withdrawal* symptoms such as sleep disturbances, sensory disturbances, dizziness, agitation or anxiety, sweating and nausea;"[2] |
| **France:** | "Abrupt *withdrawal* of the treatment may cause, within one week, symptoms such as dizziness, sensory disorders, sleep disturbances, agitation and anxiety, asthenia, digestive disorders and sweating.  These signs may persist for 1-2 weeks." |
| **Italy:** | "*Withdrawal* symptoms may occur if treatment is discontinued abruptly.  Such symptoms ... include: insomnia, dizziness, sweating, palpitations, nausea, anxiety, irritability, paresthesia and headache;" |
| **The UK:** | "*[W]ithdrawal* symptoms have been reported on stopping treatment. ... Dizziness, sensory disturbance (e.g. paresthesia), anxiety, sleep disturbances (including intense dreams), agitation, tremor, nausea, sweating and confusion have been reported following abrupt withdrawal of 'Seroxat' [Paxil];"[2] |
| **Ireland:** | "*Withdrawal* reactions have been reported following discontinuation of 'Seroxat' [Paxil], these include dizziness, sensory disturbance (e.g. paresthesia), anxiety, sleep disturbances (including intense dreams), agitation, tremor, nausea, sweating and confusion;" |
| **Spain:** | "*Withdrawal symptoms[.]*    Discontinuation of paroxetine administration (especially if it is abrupt) may lead to withdrawal symptoms such as dizziness, sensory disturbances (including paresthesia and sensation of cramps), headache, sleep disturbances, agitation or anxiety, nausea and sweating." |

---

[2] The trade name for Paxil in some foreign countries is Seroxat, not Paxil, but the drug is the same.

15. In the United States, however, GSK actively instructs its drug sales representatives to imply that Paxil does not cause withdrawal reactions. GSK encourages its drug representatives to refer to withdrawal symptoms as "discontinuation symptoms" in order to minimize the serious withdrawal effects associated with decreasing or terminating Paxil use. In addition, GSK instructs its sales force to downplay the increased risk of withdrawal associated with Paxil by telling physicians that "discontinuation symptoms" occur at the same rate with all antidepressants. These representations have misled the medical community.

16. Because GSK concealed and suppressed the information about the severity and frequency of Paxil withdrawal reactions, neither Plaintiffs nor many of their treating physicians were aware that Plaintiffs' symptoms were withdrawal reactions. As a result, their symptoms were often misdiagnosed, and Plaintiffs were subjected to unnecessary tests and medical treatment.

17. While most of the medical community is still unaware of Paxil's withdrawal problems, some scientists and doctors have known for years that SSRI drugs do cause withdrawal reactions in a significant percentage of users. The evidence documented by these doctors and scientists reveals that Paxil's withdrawal reactions are by far the worst. According to data collected by the World Health Organization ("WHO"), Paxil has the highest incidence rate of withdrawal adverse experiences of any antidepressant drug in the world.

18. Paxil is the worst offender when it comes to SSRI-induced withdrawal reactions, dependency and addiction. A principal reason for Paxil's sudden and severe withdrawal problems is the drug's short "half life" (the length of time it takes for a drug to leave the body). Paxil's half life is 24 hours. By contrast, Prozac, one of Paxil's competitors in the SSRI arena, has a half life of several days. While Paxil is said to be favored over Prozac in some aspects of psychopharmacology, Prozac clearly has an advantage over Paxil as to addiction, dependency and withdrawal. However, owing to GSK's

7

aggressive concealment and suppression of Paxil's addictive characteristics over several years, this fact is not well known, even among medical practitioners. In fact, in a recent survey published in the Harvard Mental Health Letter dated February 2001, it was disclosed that as many as 75% of non-psychiatric physicians were unaware that Paxil can cause dependency/withdrawal reactions or how to properly diagnose the associated symptoms.

19. Viewed as a "competitive" matter with Prozac, the half life issue was fraudulently exploited by GSK. In 1997, the Drug Surveillance Research Unit ("DSRU"), an official British entity, conducted a study of 13,741 patients who had been treated with SSRIs. Upon conclusion, the study's authors officially reported in the scientific literature that, although all SSRIs showed a similar incidence of adverse events overall, Paxil was the worst offender in causing withdrawal. Viewing this as a "competitive" issue with Prozac and another SSRI, Zoloft, GSK's corporate leadership directed its sales force to falsify the DSRU study. All sales personnel were directed to promulgate to physicians in every state that the DSRU study showed all SSRIs induce the same rate of withdrawal. On information and belief, that fabrication reached most of the physicians for which it was intended.

20. GSK had a legal responsibility to monitor the above scientific literature, and it had a duty to take corrective action to warn doctors and modify Paxil's deficient label *as soon as reasonable evidence of an association between Paxil and these reactions surfaced.*[3] GSK did not do so. In fact, GSK has never warned doctors in this country that Paxil can cause withdrawal symptoms and it did not change its Paxil labeling in this country *until December 14, 2001*, <u>after</u> being prompted to do so by the FDA.

---

[3]    21 C.F.R. § 201.57 ("labeling shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved.")

8

21.  The new labeling does not warn patients that Paxil can cause withdrawal symptoms, addiction or dependence.  In fact, the warning section of Paxil's label contains no mention of Paxil's withdrawal symptoms.  Instead, the new label vaguely discusses the occurrence of new clinical trials which tapered patients off the drug, without acknowledging the reason for instituting the tapering regime, i.e., that abrupt cessation of Paxil treatment does in fact cause withdrawal symptoms.  The new label does report the adverse events that occurred in these clinical trials, and it does acknowledge that, in the general population, there have been "spontaneous reports" of adverse events in patients who "discontinue" Paxil.  The label, however, then goes on to state that "such adverse events may have no causal relationship to the drug" and that "these events are generally self-limiting[.]"[4]  These statements are false, and GSK has known for at least a decade that Paxil can

---

[4]    GSK's revised Paxil labeling currently states:

> **Discontinuation of Treatment with Paxil**: Recent clinical trials supporting the various approved indications for *Paxil* employed a taper phase regimen, rather than an abrupt discontinuation of treatment. The taper phase regimen used in GAD and PTSD clinical trials involved an incremental decrease in the daily dose by 10 mg/day at weekly intervals. When a daily dose of 20 mg/day was reached, patients were continued on this dose for 1 week before treatment was stopped.
>
> With this regimen in those studies, the following adverse events were reported at an incidence of 2% or greater for *Paxil* and were at least twice that reported for placebo: abnormal dreams (2.3% vs 0.5%), paresthesia (2.0% vs 0.4%), and dizziness (7.1% vs 1.5%). In the majority of patients, these events were mild to moderate and were self-limiting and did not require medical intervention.
>
> During *Paxil* marketing, there have been spontaneous reports of similar adverse events, which may have no causal relationship to the drug, upon the discontinuation of *Paxil* (particularly when abrupt), including the following: dizziness, sensory disturbances (e.g., paresthesias such as electric shock sensations), agitation, anxiety, nausea, and sweating. These events are generally self-limiting. Similar events have been reported for other selective serotonin reuptake inhibitors.

9

immediately cause severe and painful withdrawal symptoms in patients who reduce or terminate their Paxil usage.

22. In addition to the fact that this new labeling does not warn that Paxil itself is responsible for *causing* withdrawal symptoms, most all Plaintiffs in this action began taking Paxil before the label change and thus became dependent upon Paxil *before* GSK provided *any* information about what could happen upon the "discontinuation" of Paxil treatment. After the labeling change GSK also persisted in flooding the physicians' offices throughout the country with false information on Paxil. As mentioned above, GSK also aired T.V. commercials which encouraged consumers to treat their "generalized anxiety disorder" with Paxil, while trumpeting the false claim that "Paxil is not habit forming."    In line with this misinformation campaign, GSK also handed out glossy colored pamphlets to physicians nationwide which contained no reference to Paxil's ability to cause withdrawal and instead stated only that Paxil "may cause mild, usually temporary, side effects in some individuals."    Again, GSK knew that these statements were false.    GSK knew that Paxil causes severe side effects in a substantial number of individuals and that the drug's addictive

---

Patients should be monitored for these symptoms when discontinuing treatment, regardless of the indication for which *Paxil* is being prescribed. A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate (see DOSAGE and ADMINISTRATION).

10

qualities have effectively hooked many patients for years, such that many are not able to come off the drug.

23. Even now GSK continues to directly deceive the public regarding Paxil clinical studies as they pertain to addiction, dependency and withdrawal. In the same glossy-style pamphlets noted above, GSK asks the following question: "Can I Become Addicted to Paxil?" GSK then answers that question with the following: "Paxil has been studied both in short-term and long-term use and is not associated with dependence or addiction." The answer is false and misleading because it suggests that the studies systematically probed the dependency and addiction issues, and that Paxil came up clean. That is false. No such studies were conducted as acknowledged by GSK in its new label for Paxil which states:

> DRUG ABUSE AND DEPENDENCE. Physical and Psychologic Dependence: Paxil has not been systematically studied in animals or humans for its potential for abuse, tolerance, or physical dependence. While the clinical trials did not reveal any tendency for any drug seeking behavior, these observations were not systematic and it is not possible to predict on the basis of this limited experience the extent to which a . . . (central nervous system) . . . active drug will be misused, diverted and/or abused once marketed. Consequently, patients should be evaluated carefully for history of drug abuse, and such patients should be observed closely for signs of Paxil misuse or abuse (e.g., development of tolerance, incrementations of dose, drug seeking behavior).

24. Evidence of GSK's knowledge of the withdrawal reactions its drug was causing can also be found in a report to Dr. Martin Brecher of the FDA which disclosed subjective reporting gathered from patients by clinical investigators who told GSK's management that Paxil was dangerously addictive. A group of 108 patients ending their participation in a trial told GSK that Paxil had caused them to suffer "withdrawal" reactions ("Group of 108 Complaining Patients' Study"). Out of the 1,293 patients in that trial, the 108 complaining patients constituted 8.3% of the participants. GSK deliberately and improperly reclassified these patients' withdrawal reactions as "relapse"

symptoms. However, "relapse" is not "withdrawal." Relapse occurs when a patient who has improved his/her depressive state, then reverts back to a more seriously depressed state. Symptoms exhibited during relapse are qualitatively different from the reactions exhibited during withdrawal. As indicated elsewhere in this Complaint, it is alleged on information and belief that GSK, over the years, deliberately mischaracterized numerous patients' withdrawal reactions as relapse symptoms.

25. Notwithstanding GSK's knowledge of the withdrawal reactions associated with Paxil from its pre-FDA approval clinical trials and its post-marketing ten years of Paxil experience with the general patient population, GSK has done nothing about it. GSK has been consciously indifferent to the problem in order to preserve its profits of nearly $3.0 billion a year and to further increase its market share.

26. GSK's continued advertising on print, radio, and television regarding Paxil's short "half life" induces both physicians and patients to believe that Paxil has no withdrawal reactions or dependency problems. In public promotion programs, GSK asserts that Paxil's short "half life" does not affect the therapeutic process and reduces side effects. As a result, more and more patients are being prescribed Paxil and are becoming dependent on the drug. The list of patients addicted to Paxil grows daily.

27. Despite the extensive documented history of withdrawal reactions and dependency/withdrawal syndrome associated with Paxil (as set forth in its internal documents) and an ever increasing number of Paxil withdrawal complaints, GSK adopted a policy of strategic ambiguity to downplay withdrawal syndrome associated with Paxil. The policy is a public relations ploy. The strategy recognizes that certain code words must be placed in the public arena to make it appear that GSK is confronting Paxil's safety issues forthrightly. One tactic in that strategy is labeling "withdrawal" as "discontinuation." In this, GSK attempts to nullify the negative connotation

of "withdrawal" and redefine it with misleading terminology. This strategy is a fraud on its face. There is no word "discontinuation" in the medical dictionary. All medical dictionaries properly define "withdrawal" as the operative word to describe the condition. The American Psychiatric Association, the official authority on diagnosing such symptoms, likewise specifies "withdrawal" as the proper word.

<u>**COUNT I**</u>
<u>**Fraud and Fraudulent Misrepresentation**</u>

28.    The allegations of each of the preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

29.    GSK has since December 29, 1992, defrauded the medical profession in general and Plaintiffs' healthcare providers in particular, and the Paxil patient population in general and Plaintiffs in particular, in that it, among other acts and/or omissions:

a.    Knowingly mischaracterized and miscoded withdrawal syndrome occurring during the clinical trials so as to reduce the number of recorded occurrences of withdrawal reactions;

b.    Concealed from and failed to inform the medical community that a significant number of individuals taking Paxil during foreign clinical trials experienced dependency/withdrawal syndrome;

c.    Knowingly misrepresented and continue to misrepresent that its clinical trials and investigations adequately tested for withdrawal syndrome;

d.    Knowingly claimed that Paxil's withdrawal problems were a relapse, when in fact they were not;

e.    Actively deceived Plaintiffs by representations in written labeling, oral communications and advertising suggesting that Paxil is not habit forming, that it is not addictive, that it does not cause physical or psychologic dependency, and that it would not cause withdrawal reactions if dosage were reduced or terminated;

f.  Answering the question: "Is Paxil addictive?" with the response: "Paxil has been studied both in short- and long-term use and is not associated with dependence or addiction;"

g.  Implementing false and misleading techniques to hide linkage between dependency/withdrawal syndrome on one hand, and Paxil on the other.  After censoring the word "withdrawal" from company files and instructing its agents similarly, Defendant began to dilute the medical vocabulary by using misleading medical terms to substitute for withdrawal such as "discontinuation syndrome;"

h.  Over-promoting Paxil in order to increase its sale at the expense of revealing the truth about the addictive/dependency nature of Paxil;

i.  Fraudulently conveyed to all health care providers in the U.S. that Paxil's side effects were only "mild," when in fact GSK knew many of the drug's withdrawal side effects were severe;

j.  Fraudulently conveyed to all health care providers in the U.S. that a British study involving 13,741 patients illustrated that all of the SSRIs exhibited a similar rate of withdrawal reactions, when in fact GSK knew that study illustrated Paxil to have the highest rate of withdrawal reactions among SSRIs as recorded by the authors;

k.  Knowingly misrepresenting that Paxil is not habit forming when in fact GSK knows the drug induces dependency in many patients; and

l.  Knowingly engaging in deceptive and fraudulent practices while marketing Paxil in violation of the common law and state law of the State of Wisconsin.

30.  As the result of the above, each and every day, tens, if not hundreds, of patients are becoming involuntarily addicted/dependent upon Paxil because of GSK's false and misleading representations found in both print and electronic media and/or GSK's material omissions.

31.  As a result of GSK's fraudulent acts and omissions as set forth herein, GSK has deceived the medical community, including Plaintiffs' healthcare providers, into believing Paxil does not have addictive qualities and does not cause dependency/withdrawal syndrome which GSK knows it in fact does.

14

32. When said representations were made by GSK, it knew those representations to be false, or in the alternative, willfully and wantonly and recklessly disregarded whether the representations were true. These representations were made by GSK, with the intent of defrauding and deceiving the public in general and the medical community and to induce the medical community to recommend, prescribe, and dispense Paxil and for the public to take it.

33. At the time the aforesaid representations were made by GSK and at the time that Plaintiffs ingested Paxil, Plaintiffs and their prescribing healthcare providers were unaware of the falsity of said representations and reasonably relied on GSK's assertions, promulgated through its aggressive sales force to the healthcare providers as set forth herein, that the drug was safe. In reliance upon said representations, such healthcare providers did prescribe Paxil and Plaintiffs were induced to and did take Paxil. Had Plaintiffs known of the actual dangers of Paxil, through their healthcare providers or otherwise, they would not have ingested Paxil.

34. GSK's motive of deliberately failing to advise healthcare providers and the public of the adverse effects that can lead to withdrawal problems (and that it knew a percentage of users of the drug inevitably would experience) was for financial gain and its fear that, if properly labeled, Paxil would lose its share of the SSRI market through the efforts of competing manufacturers who would adversely compare Paxil's half-life to their own. GSK's goal, at the expense of those who took its drug Paxil, was for Paxil to become the dominant SSRI on the market.

35. At all times relevant herein, the conduct of GSK as set forth hereinabove, was malicious, fraudulent and oppressive toward plaintiffs and the public generally, and defendants conducted themselves in a willful, wanton and reckless manner as set forth hereinabove. Despite its specific knowledge as set forth above, GSK deliberately recommended, manufactured, produced, marketed, sold, distributed, merchandized, packaged, promoted and advertised the dangerous and defective

drug Paxil. All of the foregoing constitute an utter, wanton and intentional disregard of the rights and safety of a large segment of the public, and by reason thereof, defendants are guilty of reckless, willful and wanton acts and omissions which evidence a total and conscious disregard for the safety of Plaintiffs which proximately caused the injuries as set forth herein.

36. As a proximate result of GSKs' fraudulent acts and omissions, and due to Paxil's addictive qualities, inducement of physical and psychological dependency, and inducement of dependency/withdrawal syndrome, Plaintiffs acted to their detriment in purchasing and ingesting Paxil, which they would not have purchased or ingested had they been told the truth about, and should be reimbursed what they spent. Additionally, Plaintiffs unexpectedly suffered prolonged physical and mental anguish, harm, and suffering and have sustained damages and other losses in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray judgment against Defendants as hereinafter set forth.

## COUNT II
## Negligent Misrepresentation

37. The allegations of each of the preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

38. GSK owed a duty to Plaintiffs to avoid negligently conveying false information resulting in physical and mental injury to Plaintiffs.

39. GSK breached its duty to Plaintiffs by conveying false information on which Plaintiffs relied.

40. GSK's breach of its duty was the actual and proximate cause of physical injuries in the form of severe withdrawal reactions in the Plaintiffs. In addition, Plaintiffs are entitled to attorneys fees, injunctive relief, punitive damages, prejudgment interest, refund, and court costs.

WHEREFORE, Plaintiffs pray for judgment against GSK as herein set forth.

16

## COUNT III
### Violation of the Wisconsin Fraudulent Representations Statute, §100.18, Wis. Stats., WFRS

41. Plaintiffs repeat and reallege each and every allegation contained above with the same force and effect as if fully set forth herein.

42. At all times relevant, §100.18, Wis. Stats., WFRS was in effect. WFRS forbids advertising which is untrue, deceptive or misleading.

43. Plaintiffs are Wisconsin consumers and are protected by WFRS. Defendants are engaged in the business of manufacturing, promoting, distributing, marketing, advertising, and/or selling pharmaceutical drugs including Paxil in the State of Wisconsin.

44. Defendants' continuous practice of false and misleading advertising, constitutes a practices in violation of WFRS, §100.18, Wis. Stats.

45. By the acts and course of conduct engaged in by defendants, plaintiffs have suffered an ascertainable loss and will continue to be injured as a proximate result of defendants' untrue, deceptive and misleading advertisements, in that, among other things:

    a.    plaintiffs paid for products when defendants were knowingly mischaracterizing and miscoding the Withdrawal Symptoms occurring during the clinical trials so as to reduce the number of recorded occurrences of withdrawal reactions;

    b.    they paid for products that they would not have purchased had defendants not violated WFRS; or

    c.    they paid a price they would not have paid had defendants not violated WFRS.

46. Based upon defendants' misrepresentations and omissions and wrongful conduct, plaintiffs were induced to purchase Paxil, and as a result were injured and suffered damages in an amount to be determined at trial.

WHEREFORE, plaintiffs pray for judgment against defendants as herein set forth.

17

## COUNT IV
### Breach of Express Warranty

47. The allegations of each of the preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

48. At all times herein mentioned, Defendants utilized FDA proceedings, packaging, promotional materials and activities, and the advertising media to urge doctors, such as Plaintiffs' doctors, to prescribe Paxil, and patients, such as Plaintiffs, to purchase and use Paxil. GSK expressly warranted to physicians, to Plaintiffs and to the general public, that Paxil's association with "drug dependency" and "withdrawal syndrome" were "rare." As a result, Plaintiffs' physicians prescribed Paxil without any warning to the patients that Paxil could cause drug dependency and withdrawal syndrome.

49. GSK represented to the consumers who would use Paxil and to the physicians who would prescribe it -- without full and complete disclosure of the risks of Paxil's side effects -- that Paxil would not create drug dependency and that "withdrawal syndrome" was "rare." This amounts to an express warranty.

50. GSK, knew, or in the exercise of reasonable diligence should have known, that Paxil has serious side effects and can cause serious withdrawal reactions and dependency/withdrawal syndrome and that the occurrences are not "rare," but rather frequent.

51. Plaintiffs and their physicians relied on the express warranty representations of Defendants in the use of Paxil, but Defendants breached their warranty because Paxil can and frequently does cause severe withdrawal reactions and dependency/withdrawal syndrome.

52. As a direct and proximate result of the breach of express warranty by Defendants, Plaintiffs sustained damages and other losses according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants as hereinafter set forth.

## COUNT V
### Breach of Implied Warranty

53.  The allegations of each of the preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

54.  GSK, through Paxil's labeling, implied that Paxil was at least fit for the ordinary purposes as stated in its labeling.  But it was not because the promises and affirmations on the labeling stated that drug dependency and withdrawal syndrome were "rare."  That was false.  They are frequent, thus victimizing Plaintiffs.  Accordingly, the implied warranty was breached.

55.  As a direct and proximate result of the breach of implied warranty by GSK, Plaintiffs sustained damages and other losses according to proof.

WHEREFORE, Plaintiffs pray judgment against GSK as hereinafter set forth.

## COUNT VI
### Negligence

56.  The allegations of each of the preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

57.  GSK owed Plaintiffs a standard of care to ensure that Plaintiffs and their health care providers were adequately warned of Paxil's addictive qualities and dependency/withdrawal characteristics before the drug was prescribed.  GSK breached their duty to exercise that standard of care through their active misrepresentations and failure to warn.

58.  As a proximate result of Defendants' breach of its duty and due to Paxil's addictive qualities, inducement of physical and psychological dependency, and inducement of withdrawal syndrome, Plaintiffs proximately suffered prolonged physical and mental anguish, harm, and suffering and have sustained damages and other losses in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray judgment against GSK as hereinafter set forth.

19

## COUNT VII
### Strict Liability

59. The allegations of each of the preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

60. At all times herein mentioned, GSK knew or should have known that Paxil was and is addictive and causes dependency/withdrawal syndrome.

61. At all times hereinafter mentioned, the vast majority of the members of the general medical community and members of the general public were unaware of the withdrawal dangers existing with respect to the administration of Paxil.

62. Paxil was used by Plaintiffs in the manner and amounts in which the Defendants intended it to be used.

63. At all times material hereto, in the United States, Paxil was not properly labeled by Defendants. In fact, it was mislabeled and was not accompanied by proper warnings that Paxil can cause withdrawal reactions and dependency/withdrawal syndrome.

64. Defendants promoted and maintained Paxil on the market both to health care providers and directly to patients/consumers with the knowledge of Paxil's unreasonable risk to the public in general, and specifically to Plaintiffs.

65. Paxil, as used by Plaintiffs, was defective and unreasonably dangerous when sold by Defendants, and Defendants are strictly liable for the injuries arising from its manufacture and Plaintiffs' use.

66. As a direct and proximate result of the foregoing, Plaintiffs sustained damages and other losses according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants as hereinafter set forth.

## COUNT VIII
### Equitable Relief

67. The allegations of each of the preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

68. As a direct and proximate result of Defendants' actions and/or omissions and conduct as set forth above, many Plaintiffs have become "hooked" on Paxil. They have become dependent upon Paxil and suffer withdrawal reactions whenever they try to stop using the drug. This harm to their health can only be mitigated by the creation of a medical relief program fund to provide for a medical relief program that, among other things:

    a.    Provides a centralized clearing house to maximize the accumulation of accurate information concerning dependency/withdrawal reactions caused by Paxil;

    b.    Provides a central location of accurate information that health care providers can resort to in diagnosing and treating their patients who are experiencing Paxil-induced dependency/withdrawal reactions;

    c.    Provides a centralized information center that evaluates and disseminates information on the effective treatment available to get patients off of the drug Paxil; and

    d.    Publishes and otherwise disseminates all such information to Plaintiffs and their health care providers.

69. Many Plaintiffs are at risk of misdiagnosis and unwarranted medical treatment because of the general ignorance about Paxil-induced dependency/withdrawal reactions.

70. Many Plaintiffs have no adequate remedy at law in that monetary damages alone will not compensate them for the continuing nature of the harm to them, and the medical relief program proposed herein may prevent undue health risks before Plaintiffs become worse.

71.  Without a court-approved medical relief program that gathers and disseminates accurate information to health care providers and patients, Plaintiffs may not receive prompt and proper medical care.

72.  Further, as a direct and proximate result of GSK's actions and/or omissions, Plaintiffs, and the public have been actively deceived by representations in advertising suggesting that Paxil is not habit forming when, in fact, GSK knows that the drug induces dependency, and hooks many patients. GSK should be enjoined from making advertising claims which are inconsistent with Paxil's drug label with regard to dependency and withdrawal.

WHEREFORE, Plaintiffs pray judgment against Defendants as hereinafter set forth.

### COUNT IX
### Unjust Enrichment
### Refund/Restitution Relief

73.  The allegations of each of the preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

74.  GSK has benefited by virtue of payment by Plaintiffs of the purchase price of Paxil which they would not have paid had Plaintiffs known the true facts regarding Paxil as set forth herein.

75.  GSK knew or should have known that the benefits are unjust and unwarranted for all reasons set forth herein.

76.  GSK's retention of said benefits is unjust and unwarranted for all reasons set forth herein.

77.  As a direct and proximate result of GSK's actions and/or omissions and conduct as set forth above, Plaintiffs are entitled to an award of a refund, restitution and incidental economic losses, including the purchase price paid by Plaintiffs in connection with their purchase of Paxil.

WHEREFORE, Plaintiffs pray judgment against GSK as hereinafter set forth.

22

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment against Defendants as follows:

1.      After a trial on the merits, the Court enter a judgment requiring GSK to pay general, specific, and punitive damages in an amount sufficient to punish GSK and compensate Plaintiffs for GSK's wrongful conduct and above listed violations of law;

2.      That a comprehensive court-supervised medical relief program be created as proposed herein to assure the proper and safe treatment of Plaintiffs;

3.      For entry of an order requiring Defendants to refund and make restitution of all monies acquired from the sales of Paxil to Plaintiffs;

4.      The Court enjoin GSK from committing the acts complained of herein, consisting of making advertising claims which are inconsistent with Paxil's drug label with regard to withdrawal/dependency;

5.      For prejudgment and post-judgment interest as allowed by law;

6.      For reasonable attorneys' fees, accountants' fees, and other experts' fees;

7.      For the costs of their suit;

8.      For such other and further relief as this Court may deem just and proper; and

9.      For a trial by jury.


BY: _____
        James J. Murphy
        Keith R. Stachowiak
        Murphy and Prachthauser
        330 East Kilbourn Ave, Ste 1200
        Milwaukee, WI 53202
        414-271-1011
        414-271-9987 fax

23

Christopher L. Coffin
Patrick W. Pendley
Pendley Law Firm
P.O. Drawer 71
24110 Eden Street
Plaquemine, LA 70765
225-687-6396
225-687-6398 fax

Karen A. Menzies
Baum Hedlund
12100 Wilshire Blvd., Ste. 950
Los Angeles, CA 90025
310-207-3233
310-820-7444 fax

Donald J. Farber
Law Office of Donald J. Farber
175 North Redwood Drive, Ste 130
San Rafael, CA
415-472-7181
415-472-7182 fax

24